V. Victor Monterola-Mata Mr. Gallagher, you're up. Thank you, Your Honor. May it please the Court, Philip Gallagher for Victor Monterola-Mata. There are two points I wish to address in this. The first is that the government has failed to establish for the first time in appeal the necessary elements of Mr. Monterola's prior conviction. And then I'll move on to discuss why, even if the court accepts that the government has so established those elements, the element the government is pointing to is not a crime of violence under this Court's precedent. So, as I said, the government has failed, for the first time in appeal, to show the necessary elements of Mr. Monterola's prior New Jersey conviction. The plea form that has been submitted into the record cites a nonexistent provision of New Jersey law. And we do have some indication in the authorities before the Court of how New Jersey refers to these interlocking statutes. We've got both parties citing Why don't you walk us through the procedure used for sentencing. As I understand it, the PSR was objected to by your client. And the government submitted an addendum, which is the normal course of events, which becomes part of the PSR. And that PSR was adopted by the district court at sentencing. Now, in the addendum, as I recall, this plea agreement that's become a centerpiece of this appeal, the plea agreement by your client in New Jersey, is referenced. And the addendum also says that that plea agreement is in the record. Was the plea agreement in the record? No. Why didn't you object to that addendum and say this plea agreement isn't in the record? Because it was not an issue at the sentencing hearing. But the addendum said you had the plea agreement, and it relied on the plea agreement. And yet you did not say to the judge, Your Honor, I don't know what they're talking about about a plea agreement. We've never seen it. Because when we re-raised the reason why is because when we re-raised our objection at sentencing, the court, along with the government, proceeded to go along through each alternative subsection of the New Jersey offensive conviction. The court did not seek to rely on any plea form. The government didn't introduce this plea form. There's a reference, as you say, in the addendum authored by the probation office, not the government. And the court adopted the PSR, which includes the addendum. You had the addendum, didn't you? Yes. Yes. But the court's ruling was, I think the court's ruling at the sentencing hearing was quite clear. And then when the government presented it to our court, you did not oppose its being made part of the record, this plea agreement, which is extremely important. You did not oppose it. In your reply brief, you tried to get around that by saying, well, we just wanted you to have it so we could point out the errors in it. But there was no objection to it. There was no limiting your unopposed acceptance of the plea agreement on appeal. Right. So it's part of the record now. Correct. Well, that's why I'm arguing that it doesn't show what the government says it shows. So you admit it is part of the record. It is fair game for this panel to consider. Right. It is part of the record. The court has granted the government's motion. It is part of the record. Unopposed motion. Correct. I don't dispute that it's part of the record on appeal. All right. It was not part of the record in the district court, though. Excuse me? It was not. Since you had started with that question, it was not part of the record in the district court. Well, it's certainly part of the record by inference where the addendum talks about it. It's, again, and this court has said in the past, when there's objections to a crime of violence, what the party seeking the enhancement, it is their burden to produce those documents into the record. And that did not happen here. Neither probation, nor certainly the government, who in fact has that burden, lived up to this court, and those cases go back many years, where in the face of an objection, those documents must be introduced. And that simply didn't happen here. And the government, as well as defense counsel, went through, and with the judge, went through the entire sentencing hearing, going through the analysis of what the entirety of the scope of the New Jersey statute covered. And that was, and it's clear that was the basis for the judges. Were you the lawyer in sentencing? No, Your Honor. This was before, by my colleagues in McAllen, before Judge Crane. So, but as I said, I don't dispute that it's part of the record now, but the government still has failed to meet its burden. The New Jersey statute, that New Jersey statute doesn't exist. Well, at sentencing, did your office object or address the addendum? No, the addendum was not discussed at all by any party. But it was there for everyone to see. When you say that, you mean? The probation officer's addendum was available to everyone at sentencing, but it was not directly addressed by anyone? That's correct, Your Honor. That's correct. And I don't, and I know the addendum says that the documents had been produced. I don't actually have any indication of that, though I recognize, of course, that's what the addendum says. I have not been able to find this in my office's files, but I recognize that's what the addendum says. But, no, the addendum was not addressed. The probation officer did not speak at the sentencing hearing. It was just the two lawyers and the judge. And as I said, they all talked about the entire scope of the New Jersey statute, not any particular prong. The government literally went down through each alternative prong to explain why, in its opinion, that was a crime of violence. And the judge engaged the prosecutor in that discussion. But there was never any suggestion in that that the court should only look at one particular subsection. It was quite the contrary. The argument was clear that the full scope of the statute was a crime of violence. So you didn't, your office did not object or address the issues that were raised in the addendum? No, we didn't file a response to the addendum. And then at the sentencing hearing, we reasserted our objection and pointed out that the breadth, in particular, pointed out that the breadth of the phrase contact, sexual contact, under New Jersey law is unusually broad and nonintuitive. But, no, again, I see no reference to the addendum from any party or the court. Other than the court adopted the PSR, which includes the addendum. That's true. Yes. Right. But we know, we can look at the New Jersey cases, which are cited in both our briefs. They don't cite New Jersey statutes in this way. They cite the two statutes separately when one is being referenced in another. We have New Jersey jury instructions, which I've cited and have attached to my briefs, and they don't cite it in this way. The plea agreement signed by your client, which is in Spanish and English, it cites to 2C14-3A6. And that should be 2C14-2A6. And that's what he pleads guilty to. And then if you look at 14-2A6, it says the actor uses physical force or coercion and severe personal injury as sustained by the victim. Now, you can say, well, he didn't plead that. There's no such statute. But then I guess we have to decide whether this sort of typo has bearing. I'm not sure this is a major point, but you said, Your Honor, as part of that, that that should read he was convicted of 2C14-2A6. That would be a sexual assault offense. So it's only the one line from that subdivision, or not subdivision, but 14-2, that comes into the offense of conviction, which is 14-3. 14-3A incorporates 14-2A. Yes. Correct? The six subsections specified in that. Yes. Incorporated in 14A. Yes, Your Honor. Sexual assault. Right. So one of those elements has to be proven as part of the offense of conviction. And that's what he pleaded guilty to. Again, I do not think this record establishes that. It's also, as I point out, inconsistent with the description of the offense in the PSR, which lends further reason to doubt that this is the correct fact finding now. There's no allegations in the PSR that the offense involved either force or coercion or injury. And also, the offense of conviction, the 14-3, is not a lesser included offense of the originally charged offense. And in such cases, there should be a new charging instrument, as opposed to when someone's pleading to a lesser. But that's not, because what he was initially charged with had no elements of force or injury or, I'm sorry, force or coercion or injury. And those are additional elements that are in this offense. It's a lesser offense, but it's not a lesser included offense. And so that's another reason why it's not so obvious that Mr. Montero was convicted of this form of New Jersey sexual contact, aggravated sexual contact. But even if the court finds that that's the case, this form of New Jersey aggravated sexual contact is not a crime of violence. It's got three elements. The elements are sexual contact, force or coercion, and severe personal injury. None of these require any contact, much less force, between a defendant and a victim. And it's also important to remember there is simply no element of age. So the arguments that this is either sexual abuse of a minor or it has as an element the use of force, I think, fall away because of that. The New Jersey law is clear. Sexual contact can be committed by masturbation in the view of a victim, regardless of whether that person sees the self-touching or not. The jury instructions, the statutory definitions, the case law are all very clear about that. Force or coercion. The New Jersey statute is very clear that coercion can be committed in various ways that involve no contact between a defendant and a victim. Coercion can occur by threatening to reveal a secret, suggesting to take or withhold some official action. There is simply no requirement of contact. Were you able to find any New Jersey cases, convictions, fitting the facts that you're saying would fit this statute? Not in particular. We've got cases, you know, so my point as to sexual contact can be committed in this way. Both, well, frankly, the State v. Muhammad case that is cited in both our briefs says that sexual contact includes self-touching in the view of a victim. The offense at issue there was a different offense that incorporated the same element, but it makes clear that the New Jersey definition of sexual contact includes self-touching in the view of another. And also the definition in the jury instructions is crystal clear on this, as well as the statute. And similarly with personal injury, I cite State v. Walker, which is a New Jersey case in which, again, it involved a different sex offense, but when talking about the element of severe personal injury, the Court made clear that temporary inability to carry out daily duties is a severe personal injury. So there the person, because of the stress involved with the sexual assault, was unable to go to work for several days and had trouble relating with her husband, and that was considered severe personal injury without any showing of physical injury or contact. Well, there, there had been physical contact because it was a different sex offense, but that was not part of the element. The element of injury was based solely upon the psychological stress and the inability to work and do household chores and things. So the New Jersey cases are clear that each of those elements can happen without any contact between the defendant and the victim. And the Governor doesn't point to any case where this Court or any other Court has held an offense that involves no contact, no attempted contact, no threatened contact between a defendant and a victim can be a forcible sex offense. In Diaz-Coronado, this Court has said, I mean, obviously we don't need destructive or violent force to be forcible in this context, but in Diaz-Coronado, I'm sorry, the Court says the merest touching without permission, that satisfies force. We don't even have that here. And also, I think that's important because what we're ultimately doing here is defining what is a crime of violence. These are all subsets of that phrase, and this would be a particularly bizarre finding to find that a non-contact, non-threatening contact, is a crime of violence. That's not the normal usage of that word. And frankly, the Government never argues that a non-contact offense can be a crime of violence or can be a forcible sex offense. The Government's argument is that, well, this argument, you can tell from the elements, either sexual penetration occurred, and they say that on page 26 of their brief, or, well, at the least, touching over the clothes occurred, and that's on page 36 of their brief. But that's not true. That's not what's established by the elements of this offense the Government now points to. So the Government never even argues that this non-contact offense can be a forcible sex offense. And so that's waived. And also, and finally I'll point out, we've argued that the Government can't meet its burden of showing that the error here was harmless, and the Government hasn't even attempted to. And so that is also waived. So for these reasons, I urge the Court to vacate the sentence and remand for resentencing for Mr. Monterola. All right. Thank you, Mr. Gallagher. Barry, you're on to untangle all this. Good morning, Your Honors. Richard Barry for the United States. It looks like crimes of violence will never become a clear subject. If I could, I'd like to address Judge Barksdale's comment as to whether or not the celebrated plea form is part of the record. Precisely as Judge Barksdale noted, the addendum to the PSR says, included within the supporting documents, which were provided to all parties, is the defendant's seven-page plea form. It's initialed at the bottom right-hand corner of each page. It's signed and dated by the defendant and by defense counsel on the seventh and final page. And as Judge Barksdale said, it's in English and in Spanish. It is an interpolation on my part. I respectfully submit it is not much of an interpolation. The designation of the statute of violation is 2C14-3A6. And I would respectfully submit that it's simply a shorthand notation that Motorola pled guilty to aggravated criminal sexual contact, which incorporates 2C14-2A in one of six manners. And it narrows that to the sixth manner of committing the offense. The actor uses physical force or coercion, and personal injury is sustained by the victim. As Judge Prada said, I respectfully submit it is not much of an interpolation. What is the precedent you can cite to us where we can take 2C14-3A6 and this plea agreement? What precedent can you cite us where we can say, well, this is just shorthand, as you've just told us? Your Honor, off the top of my head, I do not have a published or unpublished opinion. I will endeavor to find one. I respectfully submit that the judgment was prepared at the time of the guilty plea, probably either by the state district judge or the district clerk, as that is usually the procedure. And someone simply pinned that in as a shorthand rendition. I would respectfully submit that it is a completely straightforward reading. Since 14-3 incorporates 14-2A, 2 through 7, this simply narrows it down to one of those six means of commission. But I do not have a case. You know, one of the tenets of criminal law in this country is it's statutory. And persons plead or don't plead to a specific statutory offense. And you agree that there is no such animal or statute as 2C14-3-A-6 as appears in this plea agreement. Yes, sir, I would agree with that. As I said out in the brief, I respectfully submit that that is a shorthand rendition incorporating 2C14-2A provision 6 into 2C14-3. Were you the lawyer at sentencing? No, sir, Your Honor, I was not. So what, if any, explanation do we have in the record as to why this supposedly smoking gun plea agreement was never even mentioned during the sentencing proceeding? Absolutely outstanding question, Judge Barksdale, and I thank you for that. The short answer is, Your Honor, I do not know. The slightly longer answer is the probation officer who prepared both the PSR and the addendum is not the same probation officer who was at the sentencing. In the valley offices, there's always a substantial shuffling among personnel. The AUSA who indicted the case and the AUSA who attended the rearrangement, neither of those individuals were the AUSA at sentencing. So both the probation officer and the AUSA at the sentencing hearing perhaps were not in possession of this piece of information. I would rely on what's in the addendum to the PSR. As you've already noted, the New Jersey plea agreement, the plea form, I beg your pardon, was provided to the parties. And obviously, I obtained a copy once I saw the notation in the addendum and submitted it to the court. You say it was provided to the parties, but if it had been provided to the parties, it would have been the record on appeal. You wouldn't have had to supplement the record, and fortunately for you, the other side did not oppose your motion. Actually, Your Honor, the original probation officer says that it was provided to the parties. I do not know. Neither Mr. Gallagher nor I obviously were the trial counsel. But it wasn't in the record for sentencing? It was not in the record on appeal as I received the record, and I'm moderately confident it was not in the record on appeal provided to Mr. Gallagher either. It was in the hands of the probation office, and again, all I can do is rely on the statement in the addendum. It was provided to both trial counsel. Counsel for the United States and the original probation officer neither were present for the sentencing hearing. The only explanation I can provide is that their successors in interest perhaps were not in possession of that one piece of information. Mr. Monarola objected to the 16-level enhancement on the basis that the statute is long and convoluted, and I would certainly agree with that, and said that it is not a crime of violence. There was a roughly five-and-a-half-page discussion of that at the sentencing hearing. Defense counsel advocated that it was not a crime of violence because there are a myriad of ways to violate the statute, some of which do not comport with the generic definition of sexual abuse of a minor or forcible sex offense or statutory rape. The prosecutor endeavored to show that all of the various ways do, in fact, comport with those generic offenses. At the end of a discussion of approximately five-and-a-half pages at the sentencing hearing, Judge Crane brought the matter into focus by asking the defense attorney, this was, I understand, a 14-year-old little girl. Judge Randy Crane's phrase, 14-year-old little girl, not mine. He was 21 years old. He was 21, five years old, sorry, seven years older than the girl, 50 percent older than the girl. A 14-year-old would be a seventh or eighth grader, an eighth grader, I think, in middle school. So is there anything that you want to add? If there was ever a point in time when either Monterola or trial defense counsel would have said, that is an incorrect set of facts, that is not appropriate for you to consider, that moment would have been the time. Trial defense counsel instead launched into a discussion of his argument for either a downward departure or a variance under 3553A. He never, Monterola, never contradicted the fact that the girl was 14. He never contradicted the fact that he was 21 at the time of the sexual encounter. And it wasn't a sexual encounter. It was apparently consensual sexual intercourse. There's a description in the PSR. And that information came from where? That information came from the PSR. Ultimately, it came from police reports from the girl's mother, who called the police in New Jersey after she discovered that her daughter had a cell phone and asked the daughter why and got a completely unacceptable explanation. And that was what he was indicted for, but the plea bargain reduced the charge, so that's not what he pled guilty to. Yes, Your Honor, that is correct. He was indicted for having sex with a girl older than 13 but 16 or younger. He pled guilty to the statute that we have discussed, 2C.14.3, incorporating one specific part of 2C.14.A.2. By your interpretation? Yes, Your Honor, by my interpretation. So it's really a rather circuitous route to get there, to put it mildly. It is a rather unique case, Your Honor, although it's unique and at the same time it's not. Precisely as Judge Crane said, you were 21, the girl was 14. It would be sexual abuse of a minor. It would be statutory rape. It would be a forcible sex offense under 2L.1.2 in the commentary. Motorola never contradicted the fact, the age differential. And my best argument, which unfortunately I do not believe is in the brief, would be López de León, which I believe Judge Prado was on the panel for. The court is not required to ignore the district court, and this court is not required to ignore things that are in front of the court. I argued in the 28J letter that under Chávez-Hernández, when Judge Crane pointedly said, 14-year-old little girl, if there was any part of that that was indirect, that obviously would have been the time for Motorola or for trial defense counsel to correct that set of facts. You know, I was going to wait until after oral argument to bring this up, but you've brought it up twice now. Each side, and you especially since you filed it, really abused the 28J letter process. You're basically filing a supplemental brief in your 28J letter. And the other side, I can understand why they feel necessary to respond, but we're seeing more and more of this. Lawyers trying to continue briefing their case right up to oral argument, citing opinions decades old as if they're new information that would satisfy 28J. You need to get it right the first time. Yes, Your Honor, and I apologize to you, Judge Marksdale, and to the court. In any event, what's the best articulation? As I said, it's kind of secured us to get there in terms of what he was indicted for versus what he actually pled to, and then reach, quote, crime of violence, close quote, as we know and understand that term. So, what's your best articulation based on our case law of us affirming this, that it was a crime of violence? I mean, is it the inherent nature of the age differential? And under the New Jersey statute, some force being assumed? I mean, what? I mean, how exactly are we getting there? Under Lopez de Leon, Your Honor. Let me put it this way. What is it you, yeah, well, I mean, what is the clear articulation? Because, I mean, there's not a straight line between the statute he was indicted for, what he pled for, what's not in the record, and what everybody understood. So, what's the best articulation of why the conviction should stand as a crime of violence, close quote? Under the uncontested age differential between Margarola and the female victim at the time of the offense, his conduct would comprise a forcible sex offense, sexual abuse of a minor, or it would involve force under the residual clause of 2L1.2B1 because of the age of the girl. That would be my best argument. As you say, he was originally indicted for sex with a girl over 13 but under 16 and allowed to plead to what New Jersey considered a lesser included offense. You know, we can, under this modified categorical approach to try to understand whether it's a crime of violence, we can't get into the individual facts. We just look at the statute and what's included in the documents in the record. And as you say, he was 21, she was 14. But tell me how that is a direct translation into the catch-all part of the guideline, which is the, you know, if it's not one of the enumerated offenses, it falls into the category of has as an element the use, attempted use, or threatened use of physical violence against the person of another. I mean, how does that, how do we get from A to B on that? Your Honor, I believe after the courts on Bonk opinion and Rodriguez, the age of consent is considered to be 18 and therefore the girl would be incapable of consenting. Sex with a 14-year-old would by its nature involve the use of force simply because of the age of the child. If there are no further questions, I'll yield the rest of my time. Okay, thank you. Back to you, Mr. Gallagher. Just quickly, I should have pointed this out initially, but in response to one of Judge Barksdale's questions, and as I said the addendum was not discussed at the sentencing hearing, but I did want to point out that my colleague at the sentencing hearing explicitly said, and this is on page 5, I don't have the electronic site, but the internal page 5 of the sentencing hearing, he said, I think the indictment we do have refers to the original count but not necessarily the amended count, so we don't have anything that necessarily pairs down what my client necessarily pled to. And then from there, the court and the prosecutor launched into the discussion about all the alternative means of committing this offense under New Jersey law. There was no response, well, yes, you do. The court just proceeded to discuss everything as if you're in fact correct, Mr. Defense Attorney, you do not have anything that pairs down this statute. And then as I understand the government's argument, main thrust on this offense, is that the court can look to the underlying conduct when the judge frankly didn't even ask the defense counsel a question, but he'd overruled the objection, the judge mused about the facts of the case, and then asked for allocution successively from defense counsel, the defendant, and the prosecutor. And when the defense attorney and defendant did not jump up and start disputing the underlying facts of an offense that were unrelated to any element of conviction, the government can now establish other elements of a conviction that Mr. Montrola was never convicted of. I think it's undisputed that Mr. Montrola matter was not convicted of an offense that had as an element the age of the victim, nor that had any particular differential between the victim and the defendant. He was initially charged with such an offense, but not convicted of such an offense. And Decomp recently from the Supreme Court says that's totally out of bounds to look at the underlying facts in this circumstance, and this court has known that for many years. Well, if we look to the, as the government says, a shorthand reference to the underlying statute, it includes the ages in it, doesn't it? No, Your Honor. And the, it says if you do this, well. I'm sorry. The initial New Jersey, the New Jersey statute of conviction just says act of sexual contact with the victim under any of these circumstances, and then you go to these circumstances, and that's two through seven. Now, the first circumstance does have an element of the age of the victim. And 2C.14.2a says if he commits an act under any of the following circumstances, per in one the victim is less than 13 years old, per in two the victim is at least 13 but less than 16, and then it goes into these other subsets about six, the actor uses physical force or coercion, and severe personal injury is sustained by the victim. Correct. So, but that's. And that's what he pleaded to using the government shorthand, which is not necessarily correct. Honest, let me be, I think you're misreading it, Your Honor. Even in the government's argument, he pled guilty in the government's argument to subdivision A6. Yes, sir. Not which an A6 is only using physical force or coercion and severe personal injury is sustained by the victim. Now, you could have also committed that same offense in different ways by committing A2, which is the age when you speak about, but there's no evidence of that. And then the other ways of committing it, A3, A4, A5, A6, A7, none of those have as an element the age of the victim. So, and I don't even think the government's shorthand, even if you accept that completely as they urge it, does not say that he pleaded guilty to subdivision A2 of that. They're suggesting he pleaded guilty to subdivision A6. That's what they're saying. But A6 has no element of the age, Your Honor. Are you accepting 6 as? I'm doing an alternative argument. I disagree that they've met their burden, but what I'm just trying to say is even granting that document at full face value, as the government says, it is wrong, as a matter of just reading the statute, that this has as an element the age of the victim. And, in fact, the State v. Muhammad case from New Jersey, as well as the jury instructions I've provided, both lay out the elements very clearly. And the elements are simply sexual contact, force or coercion, severe personal injury. There is no element of age. So those facts, and the case the government cites, Chavez-Hernandez, that's a case which was on plain error review. It's unclear to me, and that, in fact, actually the defense attorney affirmatively urged, well, so he had sex with this minor. We never did that. And also, this isn't on plain error review. And so the court looked to that concession to find that the defendant could not show any effect on his substantial rights when he got up there and admitted, essentially, to the conduct. But we're not talking about any effect on substantial rights. It's the government's burden here to show that the error was harmless, and they haven't come close to doing so. But I do – I'm sorry, may I just finish my sentence? Go ahead. I would urge the court just to look at both State v. Muhammad, as well as the Jersey jury instructions, to be clear that even under the government's plea form, there is simply no element regarding the age of the victim nor an age differential between the victim and the defendant of the offense they now on appeal are saying he was convicted of. That was the initial charge. Thank you, Your Honor. All right. Thank you, Mr. Gallagher and Mr. Perry, for your briefing in this case. As I mentioned at the outset,